UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL A. SANTELLANO,<br><br>   Plaintiff,<br><br>  v.<br><br>OFFICER TROY JOHNSEN,<br><br>   Defendant.<br>_____/ | No. C 13-4551 NC (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM**<br><br>(Docket No. 25) |

  Plaintiff Paul A. Santellano, a California pretrial arrestee proceeding *pro se*, filed an amended federal civil rights complaint pursuant to 42 U.S.C. § 1983, claiming that Defendant Officer Troy Johnsen used excessive force against him and violated his right against punishment under the Due Process Clause. Defendant has filed a motion for summary judgment on the merits as well as on the basis of qualified immunity. Although given an opportunity, Plaintiff has not filed an opposition. Based on the following reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part..

## BACKGROUND[1]

  On October 23, 2012, Plaintiff was at Macy's Men's Wear store where he was intoxicated. (Am. Compl. at 4.) Plaintiff was headed to the exit when a security guard began to chase him. (*Id.*) As Plaintiff exited a corridor, security guards overtook Plaintiff and forced him to the ground. (*Id.*) While on the ground, the security guards started to kick

---

[1] The following facts are undisputed and taken in the light most favorable to Plaintiff, unless otherwise asserted.

Plaintiff on his upper torso, stomach and ribs, and then stepped on Plaintiff's lower back. (*Id.*) The security guards threatened Plaintiff with arrest and directed racial slurs toward him. (*Id.*)

Defendant was called at 8:17 p.m. on October 23, 2012, about a felony theft that had occurred at Macy's Men's Wear, and when he arrived, he spoke with three loss prevention officers who had detained Plaintiff. (Johnsen Decl. ¶¶ 3-4.) At this time, Plaintiff was already in handcuffs, placed upon Plaintiff by the loss prevention officers. (*Id.* ¶ 4.) Pursuant to Santa Clara Police Department procedures, Defendant removed those handcuffs and replace them with handcuffs issued by the police department. (*Id.*)

Defendant was told that Plaintiff was observed with another man in the premium denim area of Macy's when both men picked up a stack of jeans and began walking toward the exit. (*Id.* ¶ 5.) Defendant was informed that when Plaintiff was about 20 feet from the exit, Plaintiff and the other man began to run out of the store, past the sales registers. (*Id.* ¶ 6.) One of the loss prevention officers contacted Plaintiff and tried to detain him, but Plaintiff dropped the jeans and began to run. (*Id.*) Eventually, Plaintiff was caught and brought back to the loss prevention office at Macy's. (*Id.* ¶ 7.)

Defendant ran a records check on Plaintiff and discovered that he was required to register as a sex offender and had failed to do so. (*Id.* ¶ 9.) Defendant arrested Plaintiff for grand theft, as well as for failure to register as a sex offender. (*Id.* ¶ 10.)

At some point, while still at the loss prevention office, Plaintiff began complaining about chest pains, told Defendant that he was suffering a heart attack, and requested immediate medical aid. (Am. Compl. at 4.) Defendant told Plaintiff to stop complaining because Plaintiff would not be receiving any medical aid or treatment. (*Id.* at 4-5.) Plaintiff told Defendant that Plaintiff needed water and to use the toilet because Plaintiff had soiled himself. (*Id.* at 5.) Plaintiff had lost control of his bowels due to a medical condition that was causing his body to shut down. (*Id.*) Defendant denied his request and tightened Plaintiff's handcuffs. (*Id.*) Defendant then threw Plaintiff into the back of the police car while Plaintiff was still handcuffed behind his back, and still suffering from the heart attack.

(*Id.*)  Plaintiff was transported to the police station and placed in a holding cell while still having severe chest pains.  (*Id.*)

Defendant believed that Plaintiff's shortness of breath was caused by his running away from the loss prevention officers and did not think that Plaintiff was suffering from a medical condition. (Johnsen Decl. ¶ 11.)  When Plaintiff was in the holding cell, Plaintiff told Defendant that he had suffered a heart attack.  (*Id.* ¶ 14.)  At that time, Defendant called the Fire Department, who arrived at 10:40 p.m.  (*Id.*)  The Fire Department personnel stated that Plaintiff was suffering from "irregular heart behavior" and transported him to Valley Medical Center, where he stayed until October 31, 2012.  (*Id.* ¶ 15; Am. Compl. at 7.)  While at Valley Medical Center, Plaintiff underwent a cardiovascular heart procedure.  (Am. Compl. at 7.)

## LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*  (internal citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will

have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## DISCUSSION

### A. Excessive Force

The Supreme Court has squarely held that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). A claim of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable . . . seizures." *See id.* at 394. Although the Supreme Court has not yet determined whether Fourth Amendment protection applies when the arrest has ripened into a detention, the Ninth Circuit has held that the "Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention." *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (citation and internal quotation marks omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotation marks omitted). Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The "most important single element" is whether there is an immediate threat to safety. *Smith v. City of Hemet*, 394 F.3d 689, 702

(9th Cir. 2005) (en banc) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)).

Concerning whether the alleged incidents amounted to an unconstitutional use of excessive force, the test for excessive force involves a three part inquiry.

> First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted. Second, we analyze the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. At this stage of the analysis, we may also consider other factors, such as the availability of alternative methods of capturing or subduing a suspect. Finally, we weigh the gravity of the intrusion against the government's interest to determine whether the force used was constitutionally reasonable.

*Mattos v. Agarano*, 590 F.3d 1082, 1086 (9th Cir. 2010). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 544 (9th Cir. 2010) (quoting *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002)).

Here, Defendant does not refute Plaintiff's claim that while Plaintiff was having trouble breathing, was soaked in his own bodily fluids, and after Plaintiff told Defendant that Plaintiff had suffered a heart attack, Defendant tightened Plaintiff's handcuffs which were keeping Plaintiff's hands behind his back, and "threw" Plaintiff into the back of the police car. Unfortunately, neither party provides any detail regarding the meaning of "threw." The court finds that, viewed in a vacuum, the amount of force used was low. However, taking Plaintiff's facts and reasonable inferences in the light most favorable to Plaintiff, in the context of other factors regarding Plaintiff's physical condition, the amount of force was more than de minimis.

With regard to the governmental interest at stake, the undisputed evidence shows that Plaintiff's crimes were grand theft and the failure to register as a sex offender. Both crimes are nonviolent and typically non-dangerous crimes. Second, there is no indication that Plaintiff posed any apparent threat to the safety of Defendant or of others. Third, at the time

5

of the challenged force, Plaintiff was not actively resisting arrest, nor was he a flight risk, considering that Plaintiff was covered in his own bodily fluids, was handcuffed, and had difficulty breathing. This fact thus weighs in favor of the force used being unreasonable.

Finally, the court must weigh the gravity of the intrusion against the governmental interest at stake. While the force used was less than moderate, the importance of the governmental interest at stake was quite low. Thus, Plaintiff has submitted sufficient evidence to establish an excessive force violation of his Fourth Amendment rights.

The reasonableness inquiry is whether Defendant's actions were objectively reasonable in light of the circumstances confronting him. *See Graham*, 490 U.S. at 396. Given that Defendant did not dispute Plaintiff's facts, summary judgment as to the excessive force claim must be denied. *See Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (noting that summary judgment in excessive force cases should be granted sparingly, as "the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom").

Defendant also argues that he is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Regarding the first prong, the threshold question must be, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

6

officer that his conduct was unlawful in the situation he confronted. *Id.*

Here, Defendant merely argues that Plaintiff's tight handcuffs do not rise to the level of excessive force, and thus, no clearly established right was violated. However, Defendant does not address Plaintiff's assertion that while Plaintiff was having difficulty breathing, Defendant tightened the handcuffs and "threw" Plaintiff into the back of the police car. Defendant bears the burden of establishing that his actions were reasonable, even if he violated Plaintiff's constitutional rights. *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). However, Defendant is silent as to the issue of reasonableness under Plaintiff's version of the facts. Thus, Defendant is not entitled to qualified immunity.

## B.  Due Process

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). A defendant violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff's claims arises under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishment Clause of the Eighth Amendment because he was an arrestee or detainee at the relevant time; however, the deliberate indifference standard still applies to his medical care claim. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (standard of deliberate indifference applicable to pretrial detainees' medical claims).

Here, Defendant argues that his actions were reasonable because Defendant believed that Plaintiff was short of breath due to his attempt to escape the loss prevention officers. However, Plaintiff asserts that, despite telling Defendant he had chest pains and was suffering from a massive heart attack, Defendant told Plaintiff to "stop complaining," threatened Plaintiff with adding more charges to Plaintiff's arrest, and informed Plaintiff that he was not going to receive any medical treatment.

Even assuming that Plaintiff was suffering from an objectively serious medical need, in

order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060. Here, there is an absence of evidence to support a showing of deliberate indifference because Plaintiff does not allege that he suffered from any harm as a result of Defendant's failure to provide or call for medical assistance while Plaintiff was at Macy's. At most, approximately two hours had passed between the time Plaintiff requested medical help from Defendant while at Macy's, and the time the Fire Department arrived to examine Plaintiff at the holding cell at Defendant's request. There is no evidence that Plaintiff suffered any harm as a result of Defendant's two-hour delay in calling for medical assistance. Plaintiff was hospitalized once he received medical help, however, there is no evidence that the hospitalization and resulting cardiovascular procedure resulted from the delay. In short, even assuming Plaintiff suffered harm, there is no evidence from which to infer that Defendant's inaction was the actual or proximate cause of such harm. *See Conn v. City of Reno*, 591 F.3d 1081, 1098 (9th Cir. 2010), *reinstated as modified by* 658 F.3d 897 (9th Cir. 2011).

Accordingly, Defendant is entitled to summary judgment on the merits.

Alternatively, Defendant is also entitled to summary judgment based on qualified immunity. For qualified immunity, the court need not determine whether the facts alleged show that defendants acted with deliberate indifference. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). Rather, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful. *See id.* at 939.

Viewing the evidence in the light most favorable to Plaintiff, at 8:30 p.m., Defendant arrested Plaintiff for grant theft and failure to register as a sex offender. (Johnson Decl. ¶ 10, Ex. A at 2.) Plaintiff was having chest pains, shortness of breath, and told Defendant that he was suffering a heart attack. Defendant refused to call for medical help for Plaintiff. Defendant believed that Plaintiff's shortness of breath was a result of Plaintiff's attempt to escape, but did not believe that Plaintiff was suffering from a serious medical issue. (*Id.* ¶ 11.) Defendant transported Plaintiff to the holding facility at the police station and advised

8

Plaintiff of his *Miranda* rights. (*Id.* ¶ 13.) There, Plaintiff again complained about shortness of breath and stated that he had suffered a heart attack. (*Id.* ¶ 14.) In response, Defendant called the Fire Department, who arrived at 10:40 p.m. (*Id.*)

The evidence shows that Defendant recognized that Plaintiff was having difficulty breathing and, according to Plaintiff, Plaintiff told Defendant he was suffering from a heart attack. However, Defendant believed that Plaintiff had shortness of breath because he was fleeing from the loss prevention officers but did not believe that Plaintiff had a medical issue. There is no evidence that Plaintiff could not speak, that Plaintiff was clutching his chest, or that Plaintiff was immobile. In fact, later on, Plaintiff was able to respond to the *Miranda* warnings and go through the booking procedure, and change out of his soiled clothing. Based on these circumstances, Defendant could have reasonably believed that Plaintiff was not facing a substantial risk of serious harm when he first denied Plaintiff's request for medical assistance. *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) ("a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high.").

Accordingly, Defendant is entitled to summary judgment on the due process claim.

## C.     Referral to Pro Se Prisoner Settlement Program

Prior to setting this matter for trial and appointing pro bono counsel to represent Plaintiff for that purpose, the Court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim set forth above. The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with Defendant, or his representative, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a motion from Plaintiff for appointment of counsel.

## CONCLUSION

1.     Defendant's motion for summary judgment is GRANTED as to Plaintiff's due

9

1 process claim.  Defendant's motion for summary judgment is DENIED as to Plaintiff's excessive force claim.

2. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claim in this action, as described above.  The proceedings shall take place within one-hundred twenty (120) days of the filing date of this order.  Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.  If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel, and the court will then set this matter for trial.

3. The clerk of the court shall mail a copy of this order, to Judge Vadas in Eureka, California.

4. The instant case is STAYED pending the settlement conference proceedings. The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.

**IT IS SO ORDERED.**

DATED:   February 5, 2015

NATHANAEL M. COUSINS
United States Magistrate Judge

10